UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUCILLE RYAN,                                          :

        Plaintiff,                            :

     -against-                                 :          12 Civ. 0526 (AJP)

ALLIED INTERSTATE, INC.,                    :

        Defendant.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEAGAN J. HENNING,                         :

        Plaintiff,                            :          12 Civ. 1719 (AJP)

     -against-                                 :

ALLIED INTERSTATE, INC.,                    :          **OPINION AND ORDER**

        Defendant.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Presently before the Court are the motions of plaintiffs Lucille Ryan and Meagan

Henning for attorneys' fees and costs from defendant Allied Interstate, Inc., pursuant to plaintiffs'

acceptance of Allied's Offers of Judgment and 15 U.S.C. § 1692k(a)(3), which allows successful

plaintiffs to recover  reasonable attorneys' fees and costs.  (Ryan Dkt. No. 20 & Henning Dkt. No.

15: Notices of Motion; Ryan Dkt. No. 21: Ryan Br. at 1; Henning Dkt. No. 16: Henning Br. at 1.)

Ryan's complaint alleged that Allied violated the Fair Debt Collection Practices Act ("FDCPA") by "[h]arassing, oppressing or abusing Plaintiff . . . by calling Plaintiff repetitively" and "[u]sing unfair or unconscionable means to collect" a disputed debt. (Ryan Dkt. No. 1: Ryan Compl. ¶ 19.)  Henning's complaint alleged that Allied violated the FDCPA by "repeatedly plac[ing] harassing debt collection calls to Plaintiff's cellular and work telephones," "falsely [telling] Plainitff that they were calling from the Federal Government," and "reveal[ing] Plaintiff's social security number" to someone at Henning's place of work while attempting to collect a disputed debt. (Henning Dkt. No. 1: Henning Compl. ¶¶ 18, 27, 32.)  Both complaints sought statutory damages of $1,000 plus reasonable attorneys' fees.  (Ryan & Henning Compls. Wherefore ¶¶ b, c.)

Ryan and Henning accepted Allied's Rule 68 Offers of Judgment to each plaintiff, which provided:

> Defendant will allow judgment to be entered against it in the amount of Five Hundred Dollars ($500.00), plus reasonable costs and attorneys' fees in an amount mutually agreed upon by the parties, or as determined by the Court if the parties cannot reach an agreement.

(Ryan Dkt. No. 15 & Henning Dkt. No. 12: Notices of Acceptance of Offers of Judgment.)

The parties failed to reach agreement on the amount of attorneys' fees and costs. (Ryan Br. at 4; Henning Br. at 4.)  Ryan seeks $6,964.00 for attorneys' fees and costs.  (Ryan Br. at 5.)  Henning seeks $7,938.56 for attorney's fees and costs.  (Henning Br. at 4.)  The parties have agreed to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Ryan Dkt. No. 14 & Henning Dkt. No. 11: § 636(c) Consent.)

For the reasons set forth below, the Court awards Ryan $2,795.00 in attorneys' fees and $377.06 in costs, and awards Henning $3,342.50 in attorneys' fees and $350.00 in costs.

## ANALYSIS

The FDCPA provides for recovery of reasonable attorneys' fees and costs.  See 15 U.S.C. § 1692k(a)(3); accord, e.g., Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 95 (2d Cir. 2008) ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs . . . ."); Woods v. Sieger, Ross & Aguire, LLC, 11 Civ. 5698, 2012 WL 1811628 at *5 (S.D.N.Y. May 18, 2012).

**The Lodestar Method of Determining Reasonable Attorneys' Fees**

As the fee applicant, plaintiffs "bear[] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." Gen. Elec. Co. v. Compagnie Euralair, S.A., 96 Civ. 0884, 1997 WL 397627 at *4 (S.D.N.Y. July 3, 1997) (Scheindlin, D.J. & Peck, M.J.).[1/]

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v.

---

[1/]   Accord, e.g., N.Y.C. Dist. Council of Carpenters v. Rock-It Contracting, Inc., 09 Civ. 9479, 2010 WL 1140720 at *2 (S.D.N.Y. Mar. 26, 2010) (Peck, M.J.), report & rec. adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010); Cablevision Sys. N.Y.C. Corp. v. Torres, 02 Civ. 7602, 2003 WL 22078938 at *5 (S.D.N.Y. Sept. 9, 2003) (Peck, M.J.); Sowemimo v. D.A.O.R. Sec., Inc., 97 Civ. 1083, 2000 WL 890229 at *3 (S.D.N.Y. June 30, 2000), aff'd, 1 F. App'x 82 (2d Cir. 2001); Lavin-McEleney v. Marist Coll., 96 Civ. 4081, 1999 WL 33500070 at *3 (S.D.N.Y. Sep. 28, 1999), aff'd, 239 F.3d 476 (2d Cir. 2001); N.S.N. Int'l Indus. N.V. v. E. I. DuPont de Nemours & Co., 89 Civ. 1692, 1996 WL 154182 at *2 (S.D.N.Y. Apr. 3, 1996) (Peck, M.J.); see, e.g., Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983).

Eckerhart, 461 U.S. at 433, 103 S. Ct. at 1939).[2]  Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward."  Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

In April 2010, the Supreme Court revisited the issue of attorneys' fees and approved of the "lodestar" approach over the more discretionary approach of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), holding:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.  Second, the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

III

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

---

[2]     The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees.  E.g., N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective.  Indeed, we have said that the presumption is a "strong" one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances.

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation.  We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel."  We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award.  This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

Perdue v. Kenny A., 130 S. Ct. 1662, 1672-73 (2010) (citations omitted).[3/]

**Reasonable Hourly Rates**

Ryan requests $6,537.00 in attorneys' fees, as follows:

---

[3/]   The Supreme Court's Perdue opinion appears to cast doubt on the viability of the Second Circuit's 2008 opinion in Arbor Hill, which relied on the Johnson factors.  In any event, the result would not differ here even if the Court used the Arbor Hill approach.

| Name | Position | Hourly Rate | Hours Spent | Fee |
|------|----------|-------------|-------------|-----|
| Craig Thor Kimmel | Partner | $ 425 | 9.5 | $4037.50 |
| Amy L. Bennecoff | Associate | 300 | 6.0 | 1800.00 |
| Jacob U. Ginsburg | Associate | 225 | 2.0 | 450.00 |
| Dawn N. Grob | Paralegal | 165 | 0.4 | 66.00 |
| Katelynn Fitti | Paralegal | 165 | 0.1 | 16.50 |
| Jason Ryan | Paralegal | 155 | 0.2 | 31.00 |
| Pete Keltz | Paralegal | 80 | 1.7 | 136.00 |
| TOTAL | | | | $6,537.00 |

(Ryan Dkt. No. 21: Ryan Br. at 5-7; Ryan Dkt. No. 22: Ryan Fees & Costs.)

Henning requests $7,484.50 in attorneys' fees, as follows:

| Name | Position | Hourly Rate | Hours Spent | Fee |
|------|----------|-------------|-------------|-----|
| Craig Thor Kimmel | Partner | $425 | 10.9 | $4,632.50 |
| Amy L. Bennecoff | Associate | 300 | 6.5 | 1,950.00 |
| Jacob U. Ginsburg | Associate | 225 | 3.3 | 742.50 |
| Jason Ryan | Paralegal | 155 | 0.1 | 15.50 |
| Pete Keltz | Paralegal | 80 | 1.8 | 144.00 |
| TOTAL | | | | $7,484.50 |

(Henning Dkt. No. 16: Henning Br. at 4-6; Henning Dkt. No. 17: Henning Fees & Costs.)

Plaintiffs' two-partner law firm, Kimmel & Silverman, P.C., is located in Ambler, Pennsylvania.  (Ryan Dkt. No. 23: Kimmel Aff. ¶ 4; Henning Dkt. No. 18: Kimmel Aff. ¶ 4.) Partner Craig Thor Kimmel has an "abundance of experience in the consumer law field," Brass v. NCO Fin. Sys., Inc., No. 11-CV-1611, 2011 WL 3862145 at *4 (E.D. Pa. July 22, 2011), report &

rec. adopted, 2011 WL 3862069 (E.D. Pa. Aug. 31, 2011), but "his FDCPA experience is recent."

Zavodnick v. Gordon & Weisberg, P.C., No. 10-7125, 2012 WL 2036493 at *5 (E.D. Pa. June 6,

2012).  (See also Ryan Dkt. No. 23 & Henning Dkt. No 18:  Kimmel Aff. ¶ 3: "[M]y primary focus

for the last several years has been the FDCPA . . . .")  The firm's arrangement with plaintiffs is a

"hybrid, both a contingency fee and a fee-shift," with the defendant compensating the Kimmel firm

if plaintiffs prevail.  (Ryan Dkt. No. 23 & Henning Dkt. No. 18: Kimmel Aff. ¶18.)[4/]  Kimmel, who

graduated from Widener University School of Law in 1989, claims that his regular billing rate is

$425 per hour.  (Ryan Dkt. No. 23 & Henning Dkt. No. 18: Kimmel Aff. ¶¶ 17, 21.)  The firm

charges $300 per hour for associate Amy L. Bennecoff, a 2005 graduate of Widener University

School of Law (Ryan Dkt. No. 24 & Henning Dkt. No. 19: Bennecoff Aff. ¶¶ 13, 30), and $225 per

hour for associate Jacob U. Ginsburg, a 2011 graduate of Temple University School of Law (Ryan

Dkt. No. 25 & Henning Dkt. No. 20: Ginsburg Aff. ¶¶ 11, 16).  The firm charges $155 per hour for

paralegal Jason Ryan, $80 per hour for paralegal Pete Keltz, and $165 per hour for paralegals Dawn

Grob and Katelynn Fitti.  (Ryan Dkt. No. 23: Kimmel Aff. ¶¶ 27-30; Henning Dkt. No. 18: Kimmel

Aff. ¶¶ 27-28.)

        The Second Circuit's "forum rule" generally requires courts to "use the hourly rates

employed in the district in which the reviewing court sits in calculating the presumptively

reasonable fee."  Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quotations

---

[4/]      Based on this fee arrangement, there is no evidence that these plaintiffs, or any of the
Kimmel firm's clients, actually pay the firm's claimed billing rates (such as $425 per hour
for Kimmel).  Rather, it appears that the billing rate is for purposes of charging defendants
in FDCPA fee shifting situations.

omitted), <u>accord</u>, <u>e.g.</u>, <u>Arbor Hill Concerned Citizens Neighborhood Ass'n.</u> v. <u>Cnty. of Albany</u>, 522 F.3d 182, 183-84, 190-93 (2d Cir. 2008). Moreover, a lawyer's hourly rate is based, in part, on overhead costs such as rent for office space, and other "local" conditions. To the extent the reasonable hourly rate for an out-of-district lawyer is less than the billing rate in the district where the court sits, the lower rate should apply. In other words, the appropriate billing rate should be the rate where the attorney works or the forum rate, whichever is lower. <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u> v. <u>Cnty. of Albany</u>, 522 F.3d at 191 n.8 ("Were a strict forum rule the settled law of this circuit, we could not have used a lower hourly rate than the hourly rate prevailing in the district where the district court sat to calculate the presumptively reasonable fee in <u>Crescent Publishing [Group, Inc.</u> v. <u>Playboy Enters., Inc.</u>, 246 F.3d 142 (2d Cir. 2001)]. <u>See also</u> <u>Sands</u> v. <u>Runyon</u>, 28 F.3d 1323, 1333-34 (2d Cir. 1994) (permitting district court to consider retainer agreement in setting hourly rate below prevailing hourly rate in the district) . . . ."); <u>Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.</u> v. <u>EPA</u>, 169 F.3d 755, 759 (D.C. Cir. 1999) ("[W]e find the use of home market rates is preferable when the home market is substantially less costly and the site of the bulk of the legal work because it produces a result that better reflects the purpose of fee shifting statutes.").

District Courts in Pennsylvania and New Jersey have rejected the Kimmel firm's billing rates in prior FDCPA cases. <u>E.g.</u>, <u>Zavodnick</u> v. <u>Gordon & Weisberg, P.C.</u>, 2012 WL 2036493 at *5-6 (awarding $290 per hour for Kimmel, $200 per hour for Bennecoff, $175 per hour for a junior associate and $100 per hour for paralegals); <u>Conklin</u> v. <u>Pressler & Pressler LLP</u>, No. 10-3566, 2012 WL 569384 at *5 (D.N.J. Feb. 21, 2012) ("[T]he Court will adopt the following hourly

rates: Mr. Kimmel ($325 per hour); Ms. Bennecoff ($250 per hour); . . . Mr. Ryan ($125 per

hour); . . . Ms. Grob ($125 per hour); Mr. Ginsburg ($125); . . ."); <u>Freid</u> v. <u>Nat'l Action Fin. Servs.,

Inc.</u>, No. 10-2870, 2011 WL 6934845 at *7 (D.N.J. Dec. 29, 2011) ("[T]he Court will adopt

Defendant's proposed hourly rates as follows: Craig T. Kimmel, Esq. ($305.00 per hour); Amy L.

Bennecoff, Esq. ($215.00 per hour); . . . and Jason Ryan ($95.00 per hour). The Court will also

reduce the hourly rate of IT personnel Jeff Ehrmann and Jacob Ginsburg from $150.00 per hour and

$200.00 per hour, respectively, to $75.00 per hour and $80.00 per hour."); <u>Cassagne</u> v. <u>Law Offices

of Weltman, Weinberg & Reis Co., LPA</u>, No. 11-2791, 2011 WL 5878379 at *6 (D.N.J. Nov. 23,

2011) ("[T]the following hourly rates will apply: attorney Kimmel ($325); attorney Bennecoff

($250); . . . and paralegal Ryan ($125)."); <u>Levy</u> v. <u>Global Credit & Collection Corp.</u>, No. 10-4229,

2011 WL 5117855 at *8 (D.N.J. Oct. 27, 2011) (awarding Kimmel $310 per hour, Bennecoff $210

per hour and paralegal Ryan $110 per hour); <u>Weed-Schertzer</u> v. <u>Nudelman, Klemm & Golub</u>, No.

10-6402, 2011 WL 4436553 at *5 (D.N.J. Sept. 23, 2011) ("Plaintiffs' legal representatives' hourly

rates in this case will be: Mr. Kimmel ($325.00); . . . Ms. Bennecoff ($250.00); . . . Mr. Ryan

($125.00) . . . ."), <u>report & rec. adopted</u>, 2011 WL 4916309 (D.N.J. Oct. 13, 2011).

　　　　The hourly rates sought by the Kimmel firm also are inconsistent with rates approved

in this district for FDCPA litigation.[5/]  <u>See, e.g., Woods</u> v. <u>Sieger, Ross & Aquire, LLC</u>, 11 Civ.

---

[5/]　　Plaintiffs' counsel maintains that the rates sought are "reasonably comparable with those charged by lawyers of like skill, experience and/or reputation practicing in the Southern District."  (Ryan Dkt. No. 21: Ryan Br. at 16; Henning Dkt. No. 16: Henning Br. at 16-17.) Counsel supports this proposition by citing distinguishable cases:  (1) a derivative action arising from the merger of two corporate giants, AOL and Time Warner that "raise[d] some
(continued...)

5698, 2012 WL 1811628 at *5 (S.D.N.Y. May 18, 2012) (awarding $200 per hour to 2004 law school graduate in FDCPA case); <u>Dunn</u> v. <u>Advanced Credit Recovery Inc.</u>, 11 Civ. 4023, 2012 WL 676350 at *6 (S.D.N.Y. Mar. 1, 2012) ("In this District, courts have found attorneys' fees ranging from $225 to $375 reasonable for civil litigators working in small firms." Court awards $300 per hour in FDCPA case to two attorneys licensed for fifteen and twenty five years, respectively.), <u>report & rec. adopted</u>, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); <u>Leyse</u> v. <u>Corporate Collection Servs., Inc.</u>, 545 F. Supp. 2d 334, 336 (S.D.N.Y.) ("[C]onsidering rates set by the Court for attorneys with experience in FDCPA cases, the Court finds that [$225 per hour] is reasonable [for attorney with ten years of consumer protection experience]."), <u>report & rec. adopted</u>, 557 F. Supp. 2d 442 (S.D.N.Y. 2008); <u>Dowling</u> v. <u>Kucker Kraus & Bruh LLP</u>, 99 Civ. 11958, 2005 WL 1337442 at *8 (S.D.N.Y. Jun. 6, 2005) ("[B]ased on prior awards in FDCPA cases and on [the Court's] own experience, the $200.00 hourly rate charged by Plaintiffs' counsel-an hourly rate to which Defendants do not object-is both reasonable and customary for an experienced attorney practicing in federal court in Manhattan."); <u>Kapoor</u> v. <u>Rosenthal</u>, 269 F. Supp. 2d 408, 415 (S.D.N.Y. 2003)

---

<u>5/</u>        (...continued)
complicated and novel issues, including the circumstance that the settlement obtained by counsel consisted essentially of cutting-edge changes in corporate governance," <u>In re AOL Time Warner S'holder Derivative Litig.</u>, 02 Civ. 6302, 2010 WL 363113 at *1 (S.D.N.Y. Feb. 1, 2010); (2) a case in which plaintiffs' attorneys won a thirty five million dollar settlement for their clients for alleged ERISA violations, <u>see</u> <u>In re Marsh ERISA Litig.</u>, 265 F.R.D. 128, 146 (S.D.N.Y. 2010); (3) a case from the Eastern District of New York involving a decade of litigation that resulted in a multi-million dollar class settlement, <u>see</u> <u>Steinberg</u> v. <u>Nationwide Mut. Ins. Co.</u>, 612 F. Supp. 2d 219, 220, 222-24 (E.D.N.Y. 2009). Obviously, all of these cases are readily distinguishable from a single plaintiff FDCPA case which was quickly settled for $500.

(awarding attorneys' fees of $225 per hour to two attorneys with ten years experience in FDCPA cases).

Prior cases in this District have approved fees of $200-$300 per hour in FDCPA cases, and prior decisions about Kimmel have rejected his request for $425 per hour and awarded rates of $290-$325 to Kimmel (and $200 to $250 to Bennecoff).  (See cases cited above.)  The prior decisions note that the Kimmel firm's "rates and hours have been substantially and repeatedly reduced by Courts . . . ." Zavodnick v. Gordon & Weisberg, P.C., 2012 WL 2036493 at *2; accord, e.g., Conklin v. Pressler & Pressler LLP, 2012 WL 509384 at *4 ("[T]he Court has identified at least six cases in the District of New Jersey, Eastern District of Pennsylvania and Middle District of Pennsylvania which have reduced the hourly rates sought by" the Kimmel firm.); Cassagne v. Law Offices of Weltman, Weinberg & Reis Co., LPA, 2011 WL 5878379 at *4 ("The [Levy] opinion notes the numerous courts which have addressed [the Kimmel] firm's fee applications and which have significantly reduced the fees.  In the Levy case, the court was troubled by the fact that various courts have had to devote time to addressing these similar [fee] motions only to produce similar results."); Levy v. Global Credit & Collection Corp., 2011 WL 5117855 a *2 ("[T]he Court notes that at the outset that this is by no means the first time that Kimmel & Silverman's fees have been reduced by a court . . . .  Accordingly, the Court finds itself puzzling over Kimmel & Silverman's insistence on claiming the same fee rates in each of its FDCPA cases.").

This Court is troubled that the Kimmel firm continues to seek $425 per hour for Kimmel (and $300 per hour for Bennecoff, etc.) despite numerous decisions rejecting those rates – and without even citing those decisions in its briefs.  Moreover, there is no evidence that any of

the Kimmel firm's clients pay its so-called "regular" hourly billing rates in FDCPA cases – the rates appear to exist for the purpose of charging defendants, such as Allied, under the FDCPA fee shifting provisions.  While higher hourly rates may be appropriate in hotly contested FDCPA cases, these two cases involved early settlements – of $500 – via accepted Rule 68 Offers of Judgment, and did not involve complex factual or legal issues.  Accordingly, the Court allows the following hourly rates:  $300 per hour for Kimmel, $225 for Bennecoff, $175 for Ginsburg, and $100 for paralegals Ryan, Grob and Fitti (and $75 for Keltz).[6/]

**Time Reasonably Expended**

In determining whether the amount of hours billed is reasonable "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983)).  "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'"  Bliven v. Hunt, 579 F.3d at 213.  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Cesario v. BNI Constr., Inc., 07 Civ. 8545, 2008 WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)), report & rec. adopted, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009).

---

[6/]    The Court notes that while Allied cited the New Jersey and Pennsylvania decisions, Allied did not state what hourly rates it would consider reasonable.

Allied objects to the hours spent by the Kimmel firm on two main grounds.  First, Allied argues that the amount of hours should be reduced because "the Kimmel Firm repeatedly seeks to recover for administrative, non-legal tasks performed by Mr. Kimmel and Ms. Bennecoff, its highest billing rate personnel on this case."  (Ryan Dkt. No. 28: Allied Opp. Br. at 12; see also Henning Dkt. No. 24: Allied Opp. Br. at 12.)  Second, Allied objects to the hours billed based on the "'repetitive nature of [Kimmel & Silverman's] FDCPA practice and boilerplate nature of the pleadings submitted in this action.'"  (Ryan Dkt. No. 28: Allied Opp. Br. at 14; Henning Dkt. No. 24: Allied Opp. Br. at 15.)[7/]

Plaintiffs cannot recover for time spent by attorneys completing administrative tasks. See E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 431-32 (S.D.N.Y., 2011) ("A court may make [across-the-board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks [such as] . . . faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file management, binding documents, and Bates stamping."), aff'd, 2012 WL 2615366 (2d Cir. 2012); Nat'l Audubon Soc'y, Inc. v. Sonopia Corp., 09 Civ. 0975, 2010 WL 3911261 at *5 (S.D.N.Y. Sept. 1, 2010) ("[A]dditional set-offs are necessary to account for the time spent on such less-skilled work [such as] . . . completion of the civil cover sheet, review of ECF procedures, and meeting with court clerks

---

[7/]    Prior decisions have reduced the Kimmel firm's time entries for this reason.  E.g., Conklin v. Pressler & Pressler LLP, No. 10-3566, 2012 WL 569384 at *7 (D.N.J. Feb. 21, 2012) ("[I]n light of the repetitive nature of [the Kimmel firm's] work in FDCPA cases and the fact that numerous of the filings in [this] matter are identical or nearly identical to documents filed in other FDCPA actions, the Court finds that the following entries are excessive and will reduce the hours billed by Plaintiffs . . . .").

to discuss order to show cause and default judgment procedures."), report & rec. adopted, 2010 WL

5373900 (S.D.N.Y. Dec. 22, 2010); Tucker v. City of N.Y., 704 F. Supp. 2d 347, 356 (S.D.N.Y.

2010) ("A further problem is found in a number of entries that reflect attorneys performing work that

can be done by a clerical person or at most a paralegal.  This includes such work as the copying and

mailing of pleadings or other documents, the Bates-stamping of documents, the filing of papers, and

the service of pleadings.  The plaintiff's application seeks to charge full attorney rates for these

services, a demand that is indefensible." (record citations & fn. omitted)).[8]

     The case law also makes clear that the Court may reduce the fees requested for billing

entries that are vague and do not sufficiently demonstrate what counsel did.  See, e.g., Carrasco v.

W. Vill. Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.)

(reducing attorney's hours where "some of the billing entries are vague and the time spent

excessive"); Gordon v. Site 16/17 Dev., LLC, 11 Civ. 0427, 2011 WL 3251520 at *5 (S.D.N.Y. July

28, 2011) (Peck, M.J.) ("When time records reflect vague and duplicative entries, and entries for

attorneys performing ministerial tasks, the Court may order a reduction in attorneys' fees." (citing

cases)); VFS Fin., Inc. v. Pioneer Aviation, LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 (S.D.N.Y.

---

[8]    This is not news to the Kimmel firm.  See, e.g., Zavodnick v. Gordon & Weisberg, P.C., No. 10-7125, 2012 WL 2036493 at *7 (E.D. Pa. June 6, 2012) ("I agree with Defendant that the administrative tasks performed by non-attorneys [i.e., paralegals] are not properly billed . . ."); Conklin v. Pressler & Pressler LLP, 2012 WL 569384 at *7; Levy v. Global Credit & Collection Corp., No. 10-4229, 2011 WL 5117855 at *6 n.5 (D.N.J. Oct. 27, 2011) ("Kimmel & Silverman is hereby advised not to persist in claiming [administrative] fees . . . ."); Alexander v. NCO Fin. Sys., No. 11-CV-401, 2011 WL 2415156 at *7 (E.D. Pa. June 16, 2011) (reducing hours billed by 2.5 hours for tasks such as "opening a file in a database, mailing letters, and copying documents to a CD").

Aug. 11, 2009) (Peck, M.J.) ("Having reviewed [plaintiff's] attorneys' time sheets, the Court believes that a number of [plaintiff's] attorneys' billing entries are overly vague or duplicative, and that a percentage fee reduction therefore is appropriate."); <u>J.S. Nicol, Inc.</u> v. <u>Peking Handicraft, Inc.</u>, 03 Civ. 1548, 2008 WL 4613752 at *4 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("A time entry is vague if it lacks sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.  Where billing records are vague, a [percentage] reduction in fees is . . . appropriate." (quotations omitted)).

The Court has carefully reviewed the Kimmel firm's billing entries in both cases, and finds that many of the entries are not compensable.  For example, in both cases, Kimmel – the highest billing lawyer – repeatedly billed for reviewing ECF entries.  While that cannot be totally characterized as "administrative," it could easily have been done by a lower-billing lawyer.  Moreover, Kimmel has several entries of 0.1 (six minutes) on the same day for review of ECF emails, thus inflating the time spent.  For example, in the Ryan case, on January 25, 2012, Kimmel has four separate 0.1 entries for review of the following ECF notifications:  complaint filed, summons was issued, case designated ECF, and what judges the case was assigned to.  Similarly, on April 5, 2012, Kimmel has three entries of 0.1 each for reviewing ECF notifications for the three notices of appearance for Allied's lawyers.  Similar billing entries appear in the Henning case.  The Court deducts all of the "ECF" related entries from Kimmel's time, reducing his time in Ryan by 2.3 hours and Henning by 1.8 hours.  The Court also reduces Kimmel's hours for excessive internal emails, especially those lacking detail (such as email Ginsburg re complaint) and work that should have been done by lower-billing lawyers, resulting in a further reduction of 1.7 hours for Kimmel

in Ryan and 2.3 hours in Henning.  In total, the Court reduces Kimmel's hours in Ryan from 9.5

hours to 5.5 hours, and in Henning from 10.9 to 6.8 hours.

Similarly, based on the Court's review of billing entries reflecting vague or other

improper entries, the Court reduces Bennecoff's hours in Ryan by 2.5 hours to 3.5 hours and in

Henning by 3.1 hours to 3.4 hours.  Associate Ginsburg's hours are reduced by 0.5 hours in Ryan

and by 0.5 hours in Henning.  Paralegal hours also need to be reduced, as follows:  Paralegals Grob,

Fitti and Ryan are reduced by 0.2 hours in Ryan and paralegal Keltz's hours are reduced by 1.1 hours

in Ryan and 1.3 hours in Henning.

The Court notes that while Allied complains of the boilerplate nature of the Kimmel

firm's filings, review of the billing entries does not support the implication that the Kimmel firm is

charging in numerous cases for doing the same work.  Rather, the complaints and fee applications

in these cases could be prepared in so little time because of the work that the Kimmel firm had "in

the can" from prior cases.  If a different firm had to perform all the research and drafting from

scratch, its bills would have been much higher.

Plaintiffs' attorneys will be compensated for the Ryan case as follows:

| Name | Position | Hours Allowed | Rate | Fee |
|------|----------|---------------|------|-----|
| Craig Thor Kimmel | Partner | 5.5 | $300 | $1650.00 |
| Amy L. Bennecoff | Associate | 3.5 | 225 | 787.50 |
| Jacob U. Ginsburg | Associate | 1.5 | 175 | 262.50 |
| Dawn N. Grob Katelynn Fitti Jason Ryan | Paralegals | 0.5 | 100 100 100 | 50.00 |
| Pete Keltz | Paralegal | 0.6 | 75 | 45.00 |
| TOTAL | | | | $2,795.00 |

Plaintiffs' attorneys will be compensated for the Henning case as follows:

| Name | Position | Hours Allowed | Rate | Fee |
|---|---|---|---|---|
| Craig Thor Kimmel | Partner | 6.8 | $300 | $2,040.00 |
| Amy L. Bennecoff | Associate | 3.4 | 225 | 765.00 |
| Jacob U. Ginsburg | Associate | 2.8 | 175 | 490.00 |
| Jason Ryan | Paralegal | 0.1 | 100 | 10.00 |
| Pete Keltz | Paralegal | 0.5 | 75 | 37.50 |
| TOTAL | | | | $3,342.50 |

**Costs**

Plaintiff Ryan requests $427.00 in costs for filing the complaint ($350.00) and counsel's travel expenses to a conference in New York ($77.00).  (Ryan Dkt. No. 21: Ryan Br. at 24; Ryan Dkt. No. 22: Ryan Fees & Costs.)  Plaintiff Henning requests $454.06 in costs for filing the complaint ($350.00), counsel's travel expenses to a conference in New York ($77.00) and a transcript fee ($27.06).  (Henning Dkt. No. 16: Henning Br. at 24; Henning Dkt. No. 17: Henning Fees & Costs.)   The Court awards the filing fee and transcript costs, but denies travel-related expenses.  Allied is a company with a national presence, and counsel's travel expenses are a result of plaintiffs' choice to litigate these cases in the Southern District of New York while being represented by a firm based in Ambler, Pennsylvania.

Accordingly, the Court awards Ryan $377.06 and Henning $350.00 for costs.

## CONCLUSION

For the reasons set forth above, the Court awards plaintiff Ryan $2,795.00 in attorneys' fees and $377.06 in costs, for a total of $3,172.06. The Court awards plaintiff Henning $3,342.50 in attorneys' fees and $350.00 in costs, for a total of $3,692.50. The Clerk of Court shall enter judgments accordingly and close these cases.

SO ORDERED.

Dated:        New York, New York
              August 9, 2012

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies **by ECF** to:    Craig Thor Kimmel, Esq.
                         Casey D. Laffey, Esq.

H:\OPIN\RYANvALLIED